UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable BARBARA LYNN MAJOR, Magistrate Judge

CASE NO. 3:17-cr-648-JM

UNITED STATES OF AMERICA,   )
                            )
    Plaintiff,              )
                            )
 VS.                        )
                            )
ZACHARY VASQUEZ,            )
                            )
    Defendant.              )
_____)

San Diego, California
Tuesday, September 12, 2017

<u>TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING</u>
<u>OF PROCEEDINGS</u>

Liberty Court Player 9:19-9:43 a.m.

APPEARANCES:

For Plaintiff:   ALANA W. ROBINSON
               United States Attorney
               880 Front Street
               San Diego, California 92101
               BY: LAWRENCE CASPER
                  ASSISTANT UNITED STATES ATTORNEY

For Defendant:   LAW OFFICES OF EZEKIEL E. CORTEZ
               550 West C Street, Suite 790
               San Diego, California 92101
               BY: EZEKIEL E. CORTEZ
                  JOSHI VALENTINE
                  ATTORNEYS AT LAW

Transcribed By:  Ellen L. Simone

1          (Proceedings begin at 9:19 a.m.)

2          THE CLERK:   Calling matter 1, 17-cr-648-JM, U.S.A.
3  versus Zachary Vasquez.

4          MR. CORTEZ:   Good morning, Your Honor.  Ezekiel Cortez
5  on behalf of Mr. Vasquez.

6          MS. VALENTINE:   Joshi Valentine, also on his behalf.

7          THE COURT:   Thank you.

8          MR. CASPER:   Your Honor, Lawrence Casper of the United
9  States on the Vasquez matter.

10          THE COURT:   Thank you.

11          (Matters not related to present case discussed.)

12          THE COURT:   Mr. Cortez, what's your client doing?

13          MR. CORTEZ:   We're going to request a hearing.

14          THE COURT:   Hearing?  Great.

15          (Matters not related to present case discussed.)

16          THE COURT:   So the other two defendants then, today
17  your case is going forward on the detention hearing.

18          So first, Mr. Vasquez, listen carefully, this is your
19  detention hearing.

20          Government.

21          MR. CASPER:   Thank you, Your Honor.  Your Honor, the
22  United States would proceed by proffer based on both risk of
23  flight and danger to the community.

24          First, Your Honor, this defendant is charged by
25  indictment with one count each of conspiracy to distribute

1  5 kilograms or more of cocaine, and with the importation of
2  5 kilograms or more of cocaine.
3           This case carries with it a rebuttable presumption in
4  favor of detention pursuant to 18 U.S.C. 3142(e)(3)(A) and the
5  charge carries with it a mandatory minimum sentence of ten
6  years and a maximum of life.
7           The defendant -- this defendant was also previously
8  ordered detained in the Central District of California before
9  he was sent here.
10          This case, Your Honor, involves an extensive wiretap
11 investigation with Court-authorized intercepted communications,
12 including communication of this defendant, a number of related
13 multi-kilogram cocaine seizures, and substantial evidence
14 against this particular defendant.
15          This -- briefly, this defendant was a recruiter, a
16 narcotics transportation coordinator for the drug trafficking
17 organization that was moving substantial quantities of cocaine
18 from Mexico to the United States through the Southern District
19 of California, as well as other areas of the country.
20          Intercepted communications and other evidence show
21 that the defendant recruited and coordinated couriers moving
22 narcotic loads into the United States from Mexico and
23 coordinated the movement of narcotics from Southern California
24 to Chicago and other locations.
25          In addition to the hundreds of kilograms of cocaine

1 that were seized in connection with this conspiracy, the
2 government also seized -- law enforcement also seized a
3 significant weapons cache with hand grenades, a grenade
4 launcher, .650 caliber weapons, and other firearms, along with
5 a significant quantity of ammunition. Those were seized in the
6 Chicago area and have been linked to the conspiracy involving
7 this defendant.
8     THE COURT: Have they been linked to this defendant
9 individually or just to the conspiracy?
10     MR. CASPER: To the conspiracy, Your Honor, not
11 directly to this defendant.
12     THE COURT: All right. Thank you.
13     MR. CASPER: And not -- at least not at this juncture.
14     The evidence will show that this defendant was working
15 closely with high-ranking Mexican-based drug trafficking
16 organizations members, and that close family relations of this
17 defendant in Mexico were actively involved, were members of,
18 and significant players in this drug trafficking organization.
19     This defendant was, based on those he recruited and
20 supervised in the conspiracy, responsible for hundreds of
21 kilograms of cocaine and other narcotics being transported for
22 distribution into and within the United States.
23     The nature and circumstances of this case are
24 aggravated, and the weight of the evidence here is extremely
25 compelling.

                With respect to the risk of flight here.  That is
demonstrable given the mandatory minimum penalties, the
statutory maximum here, coupled with this defendant's
misrepresentations, his lack of candor concerning his extensive
travel in Mexico in 2000 -- in Mexico and elsewhere in 2016 and
2017, including Panama, Bogotá, Columbia, which is reflected in
the Central District's pretrial services report.
                The extensive nature of his foreign contacts, many of
whom are known, are believed, based on your investigation, to
be narcotics trafficking associates.  There is, the government
believes, a significant risk of flight.
                The government also believes, given the circumstances
of his ownership of a weapon, as well as other instances
involving weapons in this case, that there is a significant
risk based on the defendant's danger to the community.
                With respect to the history and characteristics of
this defendant.  The government notes that he has a 2007 arrest
for possession of narcotics and narcotics paraphernalia.
                It appears, based on pretrial services report, that he
did successfully complete a deferred judgment term in
connection with that, but he did -- he was involved in that
conduct.
                In addition, the defendant has admitted that he
regularly used cocaine bi-weekly, apparently, up until the time
of his arrest ten years ago when he claims that that use

1  ceased.
2  　　　　　The defendant is also, as noted, the registered owner
3  of a. 40 caliber Sig Sauer handgun, although, interestingly,
4  based on pretrial services report, it appears that his wife
5  knew nothing of the presence of that firearm at their
6  residence, and either she was lying for him, or she
7  acknowledged she knew nothing about it, and the defendant
8  didn't share the fact that he had a firearm at his residence.
9  I do believe that that goes to his character.
10 　　　　　With respect to physical and mental condition. The
11 government has no information on any particular conditions of
12 this defendant.
13 　　　　　With respect to family ties. Although the defendant
14 is a United States citizen, does have significant family ties
15 in the Central District, he also has substantial family and
16 other ties, including substantial criminal ties, in Mexico and
17 beyond in other Latin American countries as well, and so the
18 government believes that that factor is really neutralized by
19 the presence of those other family ties.
20 　　　　　With respect to employment and education. The
21 government understands that he is serving as a repair manager
22 in the Southern District. We understand that he has very
23 limited financial resources based on the pretrial services
24 report, although other family members may have resources --
25 some additional -- may have additional resources.

1          Finally, Your Honor, given the -- he has no known ties
2   here in the Southern District of California outside of his
3   criminal conduct.
4          Given the mandatory minimum and the statutory maximum,
5   the presumption in favor of detention in this case, the
6   substantial evidence against him, and given his substantial
7   criminal familial ties to Mexico and other Latin American
8   countries, as well as his lack of candor with pretrial services
9   in Los Angeles, and his narcotics history, the government
10  believes that the danger he presents to the community is
11  palpable based on the firearms ownership and other weapons
12  associated with the conspiracy, and that there appear no
13  condition or combination of conditions that can ensure his
14  continuing appearance, both based on risk of flight and danger
15  to the community.
16         And so ultimately, we don't believe he can overcome
17  the presumption, and with that, we'll submit, Your Honor.
18         THE COURT:   All right.  Thank you.
19         Which one of you is talking?
20         MR. CORTEZ:   That's a mouthful.
21         At the outset, let me note that his wife, Gayla
22  Vasquez, who is right here in the courtroom, didn't --
23         THE COURT:   Raise your hand, ma'am.  Great.  Thanks
24  for coming to support him.
25         MR. CORTEZ:   -- she didn't lie to anyone.  In fact,

1    everything she told pretrial was checked out, number one.
2                But number two, I'm sitting here looking at a sealed
3    indictment that is partially redacted, and the only name is
4    my -- our client, Zachary Vasquez.
5                I'm looking at an indictment with Count One of
6    conspiracy to distribute cocaine.  I don't see any charge of
7    conspiracy to distribute weapons, grenade launchers, missiles,
8    or ICBMs.
9                Count Two alleges the huge amount of 32.46 kilograms
10   of cocaine, so this is what we will be basing our presentation
11   upon, not all the other stuff that was thrown into this case.
12               First, there is extensive travel associated with
13   Mr. Vasquez, and we wanted to know about it, and if pretrial
14   had only bothered to call his boss, his name is Rakesh Patel.
15   Rakesh Patel is the owner of a very, very valuable company;
16   hence the logistics.  You have it in the report.
17               THE COURT:    Right.
18               MR. CORTEZ:    The pretrial services report.  That
19   company been in operation since 1988.
20               Mr. Patel, incidentally, be concerned, that he is
21   willing to sign the bail, put up whatever is necessary --
22               THE COURT:    Who is?  The owner of the company?
23               MR. CORTEZ:    Mr. Patel.
24               THE COURT:    Mm-hmm.
25               MR. CORTEZ:    The very owner of this company has

1 indicated that without Mr. Vasquez, his company is suffering
2 greatly. Part of the daily routine for Mr. Vasquez in that
3 company, and he hopes -- he holds a very good position.
4 　　　　　Just to travel internationally. Because this company
5 provides airplane parts and other services and to other
6 affiliated companies, and what I did is I went on line and
7 printed it, and it's right here.
8 　　　　　This is a multinational global company, and
9 Mr. Vasquez has been an employee there for -- if I may have a
10 second -- I believe eleven years and six months. Eleven years
11 and six months. He's a key contributor to that company.
12 　　　　　And again, Mr. Patel offered to provide whatever
13 assurances the Court needs.
14 　　　　　Second, the prosecutor begins with saying, "although,
15 although, although." Well, the Bail Reform Act is very
16 emphatic that the weight of the evidence is the least of the
17 factors, number two.
18 　　　　　Mr. Vasquez is a 36-year-old United States citizen.
19 He lives with his wife and his two children. You have the ages
20 in there. And here in court today is his brother Caesar. He's
21 his half brother. They grew up together. And this is his
22 mother right here. The big narco trafficking family. They're
23 all here. Okay? They're here because they want to show the
24 Court that they have deep, deep roots in the Orange County
25 area.

1      I don't know why the prosecutor says he has no ties to
2  the San Diego area. That makes no difference. He has deep
3  serious ties.
4      In addition, Caesar, who is here, he's a property
5  owner. His property is located at 2312 Hermina Circle --
6  Hermana Circle -- sorry -- in Lake Forest -- sorry. That's the
7  employer's address. I'm sorry.
8      His property is actually located at 83 -- 8382
9  Yorkshire Avenue, Anaheim, California. It is -- it has an
10  approximate equity value of $200,000.
11      THE COURT: Is it his home?
12      MR. CORTEZ: It is his home. He lives there with his
13  family.
14      THE COURT: Is he willing to post it?
15      MR. CORTEZ: Absolutely. And he's here -- and he
16  already signed the surety information.
17      But we looked at -- we could not get an appraiser of
18  the property, so if the Court will accept it, we would get one
19  within a week. But that home is approximately half a million
20  in value. And that is his home where his family, his children
21  live.
22      And again, that's Mr. Vasquez's very close brother.
23  They grew up together.
24      Pretrial services, after looking at the Santa Ana
25  pretrial services report, which recommended detention, after

1  pretrial services looked at all the other evidence, expanded on
2  the travel issue, expanded on the .40 caliber Sig Sauer that he
3  legally owns, and his father gave him, by the way, registered
4  to him, they're recommending 50,000 personal surety secured by
5  property.  That's what we urge the Court to do in this case.
6  　　　　　Mr. Vasquez has a job, deep roots, family.  He has a
7  brother who is willing to put up his property.  He will live
8  with his wife and children.  And his passport has been seized,
9  so there is no -- there is no risk of flight unless he was to
10 hurt his entire family, abandon his children, and betray his
11 brother with whom he grew up.
12 　　　　　We believe the presumption has been rebutted.  Again,
13 I point out, the indictment that was brought before us, and
14 that the Court has to base your ruling on, this -- this
15 indictment alleges very specific, quite frankly, very usual
16 allegations in this district.
17 　　　　　So we believe that bail is appropriate.  Pretrial
18 services (inaudible) recommended it, and we urge the Court to
19 accept it.
20 　　　　　THE COURT:    All right.
21 　　　　　I do find that there are conditions that I can set in
22 this case, and so I want you to listen carefully, sir.  You
23 must comply with all of these conditions.
24 　　　　　You must not commit a federal, state, or local crime
25 during the period of release.

1          You must make all of your court appearances.

2          Your travel is restricted to the Southern and Central

3   Districts of California.  You may not enter Mexico.  You may

4   not travel internationally.

5          I understand you do that for your job.  While this

6   case is pending, you may not travel outside of the Southern and

7   Central Districts of California.

8          Do you understand that?

9          THE DEFENDANT:   Yes, I do.

10         THE COURT:   Okay.  Continuing on.

11         You must report for supervision to the pretrial

12  services agency as directed by your assigned pretrial services

13  officer, and pay for the reasonable cost of supervision in an

14  amount to be determined by the pretrial services agency and

15  approved by the Court.

16         You may not possess or use any narcotic drug or

17  controlled substance without a lawful medical prescription.

18         You may not possess any firearm, dangerous weapon, or

19  destructive device during the pendency of the case.

20         You must read or have explained to you and then

21  acknowledge understanding of the advice of penalties and

22  sanctions form.

23         You must provide a current residence address and

24  telephone number prior to your release from custody and keep it

25  current while the case is pending.

1      You must actively seek and maintain full-time
2 employment, schooling, or a combination thereof.
3      You must surrender any valid passport that you have,
4 and you may not apply for new travel documents while this case
5 is proceeding.
6      You must reside with family, a surety, or other
7 residents approved by pretrial services.
8      And you must execute a personal appearance bond in the
9 amount of $75,000 that's secured by your signature and a
10 trustee to the United States on real estate approved by a
11 federal judge.  We'll require the owners of the property to
12 sign as sureties.
13      Pretrial services, anything else?
14      PRETRIAL SERVICES:   Not at this time.  Thank you, Your
15 Honor.
16      THE COURT:   All right.
17      Do you understand, sir, that if you are released from
18 custody, you must comply with all of those conditions?
19      THE DEFENDANT:   Yes, I do.
20      MR. CASPER:   Your Honor, the government requests that
21 an additional condition be added, which is one with respect to
22 the firearm -- and actually, two additional conditions.
23      One is some protection with respect to the firearm.
24      THE COURT:   That's already in there.  He has to
25 surrender that --

| | |
|---|---|
| 1 | MR. CASPER: All right. |
| 2 | THE COURT: -- because he can't possess a weapon. |
| 3 | So there are proper ways to surrender that to somebody |
| 4 | else. Your lawyer can help with you that and pretrial |
| 5 | services. You cannot possess it while this case is proceeding. |
| 6 | Do you understand? |
| 7 | THE DEFENDANT: Yes, I do. |
| 8 | THE COURT: Okay. |
| 9 | MR. CASPER: And second, Your Honor, that the |
| 10 | defendant not associate himself with any -- any other -- any |
| 11 | individuals who have been convicted of narcotics-related |
| 12 | offenses or their families. |
| 13 | THE COURT: Why? |
| 14 | MR. CORTEZ: Well, their families is gonna -- |
| 15 | THE COURT: Hang on. |
| 16 | Why? |
| 17 | MR. CASPER: Your Honor, the government has reason to |
| 18 | believe that this defendant may approach other individuals when |
| 19 | he -- once he's on bond. |
| 20 | MR. CORTEZ: I'm sorry, Your Honor. |
| 21 | THE COURT: Hang on a second. |
| 22 | I'm concerned about this on a couple of fronts. |
| 23 | First, I understand that the indictment that defense |
| 24 | counsel has is still completely redacted so they wouldn't know |
| 25 | who those people are. |

| | |
|---|---|
| 1 | MR. CASPER: And I'm not necessarily -- I'm not saying |
| 2 | coconspirators, I'm simply saying individuals who have been |
| 3 | convicted of a narcotics offense, Your Honor. |
| 4 | THE COURT: How does he know "and their families"? |
| 5 | Like everyone he meets, does he have to say, "Do you have |
| 6 | anyone in your family that's been convicted of a felony -- drug |
| 7 | felony?" |
| 8 | MR. CASPER: Anyone he knows to be convicted of a |
| 9 | narcotics-related offense would be sufficient for the |
| 10 | government -- from the government's perspective, Your Honor. |
| 11 | MR. CORTEZ: We would object to that. That's so vague |
| 12 | and broad. If we get notice of specific people, we'd be glad |
| 13 | to tell him not to associate with narco traffickers. It's not |
| 14 | in his best interest. But he's throwing in their family and -- |
| 15 | THE COURT: Yeah. |
| 16 | MR. CORTEZ: -- it goes -- |
| 17 | THE COURT: We're taking the family part out. |
| 18 | MR. CASPER: Family -- I've already taken the family |
| 19 | out. |
| 20 | THE COURT: Narrowing it to people who have been |
| 21 | convicted -- that he knows have been convicted of a drug |
| 22 | felony. |
| 23 | Any objection to that? |
| 24 | MR. CORTEZ: No. |
| 25 | THE COURT: Okay. I'll allow that condition as it's |

1  narrowed there.

2  So there is an additional condition, sir, and that is
3  that you may not associate with anyone that you know has been
4  convicted of a drug felony.

5  Do you understand that?

6  THE DEFENDANT: Yes, I do.

7  (Pause in the proceedings.)

8  THE COURT: Okay. Those are all the conditions with
9  which you must comply.

10  Your next court appearance, sir, is October 13th at
11  11:00 a.m., for a motion hearing and trial setting.

12  That's it for today.

13  MS. VALENTINE: Thank you, Your Honor.

14  MR. CORTEZ: Thank you, Your Honor.

15  THE COURT: You're welcome.

16  (Proceedings adjourned at 9:43:a.m.)

17

18

19

20

21

22

23

24

25

# CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcription, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Southern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

DATE:  Wednesday, September 20, 2017


_____/s/ Ellen L. Simone_____

       Ellen L. Simone, RMR, CRR
       Official Court Reporter